UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:03-CV-000237-TBR

MARK A. FAUGHN and AMY FAUGHN                                                        PLAINTIFFS

and

ST. PAUL TRAVELERS COMPANIES, INC.
f/k/a TRAVELERS PROPERTY CASUALTY
CORPORATION                                                              INTERVENING PLAINTIFF

v.

UPRIGHT, INC.                                                                           DEFENDANT

## MEMORANDUM OPINION

Several pretrial motions stand ready for adjudication. Intervening Plaintiff filed a Motion in Limine to exclude the expert testimony of Thomas Blotter and John Jendrzejewski. (Docket # 91). Defendant filed a Response (Docket # 100), and Intervening Plaintiff replied to that Response. (Docket # 107). Defendant contends that a new issue was raised in the Reply, and filed a second Response. (Docket # 108).

Plaintiffs Mark Faughn and Amy Faughn (the "Faughn Plaintiffs") also filed Motion in Limine to exclude the expert testimony of John Jendrzejewski. (Docket # 97). Defendant responded (Docket # 101). Both of these matters are ripe for adjudication. The Court now DENIES these Motions in Limine.

Defendant then filed a Motion in Limine to exclude the expert testimony of Clifford B. Anderson and Robert Chasnov. (Docket # 98). The Faughn Plaintiffs responded. (Docket # 141). This matter is now ripe for adjudication, as Replies to Motions in Limine are due within seven (7) days of the previous pleading under the Court's Scheduling Order. (Docket # 69).

The Court now DENIES the Motion to exclude as to Mr. Anderson's testimony and Mr. Chasnov's metallurgical testimony. The Motion is GRANTED to the extent Mr. Chasnov testifies as to the mechanical consequences of any metallurgical flaws in the lift.

## STANDARD

A witness called to testify about scientific, technical, or other specialized knowledge must be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994). The party eliciting the expert testimony bears the burden of showing the expert to be qualified by a preponderance of the evidence, and must show that the expert witness will "assist the trier of fact in understanding and disposing of issues relevant to the case." *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000).

## ANALYSIS

A.   **Motions to Exclude Testimony of John Jendrzejewski**

Defendant intends to present testimony of Dr. Jendrzejewski analyzing the metallurgic construction of the lift in question in support of its theory that the accident was not caused by a manufacturing defect. Plaintiffs note that Dr. Jendrzejewski possesses degrees in geology and earth science, but none in the field of metallurgy qualifying him to testify about the weld characteristics of the lift in question. Dr. Jendrzejewski's resume shows, however, that he has

2

over thirty years of experience working the field of welding and metallurgical failure analysis.[1] The law does not require that an admissible expert have every conceivable qualification, only that his background provides a proper foundation for testimony which will "assist the trier of fact in understanding and disposing of issues relevant to the case." *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000).  The Court holds that Dr. Jendrzejewski's extensive experience in the area of metallurgical material failure analysis qualifies him to give expert testimony in this matter, regardless of the title on his degree.

### B.    Motion to Exclude Testimony of Thomas Blotter

Defendant intends to present testimony of Dr. Blotter analyzing the design of the lift in question supporting its theory that the accident was not caused by a design defect.  In its Motion in Limine, Intervening Plaintiff St. Paul Travelers Companies, Inc. ("SPTC") argued that Dr. Blotter, in his deposition, disclosed the following facts: he has never designed aerial lift platforms or accompanying safety equipment or manuals; he has never worked for or visited a manufacturer of aerial lift platforms; he has never authored reports, texts, or articles relating to aerial lift platforms, and; he has never sat on an ANSI committee regarding standards for aerial lift platforms.  SPTC further states that Dr. Blotter disclosed no research and development work or publications in the field of aerial lift platforms.  SPTC suggested that, to their knowledge at the time, Dr. Blotter's only experience with lifts came from litigation related investigations.

---

[1] The Defendant contends that Plaintiffs cannot argue Dr. Jendrzejewski is unqualified as an expert because he ultimately agrees with Plaintiffs' metallurgical expert.  The Court does not find this argument persuasive.  Agreement with a qualified expert does not necessarily prove that Dr. Jendrzejewski himself can form opinions which will assist the jury in its decision.

According to SPTC, Dr. Blotter is not qualified to testify to the adequacy of the lift's design without specialized experience with aerial lifts outside of his testimony in lawsuits and general experience in mechanical engineering. SPTC cites to a District of Maryland case holding that a mechanical engineering professor could not testify regarding the design of a snow thrower when his only professional experience with snow throwers or other outdoor equipment arose out of his employment as a litigation consultant. *Shreve v. Sears, Roebuck & Co.*, 166 F.Supp. 2d 378, 391-94 (D. Md. 2001). SPTC also discloses a Sixth Circuit case emphasizing the requirement that experts be qualified. *Smelser v. Norfolk S. Ry.*, 105 F.3d 299 (6th Cir. 1997). The case, however, involves a more drastic departure from the expert's area of qualification than in the case here. In *Smelser*, the expert, a mechanical engineer, sought to testify about the plaintiff's medical conditions, unlike Dr. Blotter, an engineer who intends to testify about the mechanical engineering aspects of a particular machine. *Smelser*, 105 F.3d at 304.

Defendant responds that Dr. Blotter is indeed well-qualified and experienced in the design analysis of aerial lifts. Defendant provides an affidavit indicating that Dr. Blotter has extensively tested and analyzed the structural performance and design of aerial lifts, including lifts' compliance with safety standards. The affidavit states that Dr. Blotter has been hired as a consultant and lectured on the topic of aerial lift design.

SPTC objects that Dr. Blotter's affidavit and experience is irrelevant. According to SPTC, the Court should not consider the experience outlined in the affidavit because it was not timely disclosed pursuant to discovery in this matter. Under the Court's Scheduling Order, the parties were required to list their experts to be called at trial and disclose their experts' reports by October 1, 2006. SPTC objects that, because Defendant did not provide all background

information on Dr. Blotter at this time, any further disclosure is in violation of the Scheduling Order. SPTC admits that, on December 29, 2005, Defendant notified SPTC that Dr. Blotter was investigating the case and presented SPTC with the report of Dr. Blotter's expert findings. Therefore, Defendant fully complied with its obligations under the Scheduling Order, regardless of whether Dr. Blotter's prior experience with aerial lifts was disclosed.

SPTC then objects that Dr. Blotter's aerial lift qualifications should not be considered because Defendant did not timely disclose those specifics in response to an interrogatory requesting Dr. Blotter's "academic qualifications and area of expertise." SPTC also claims that Defendant violated the Federal Rules of Civil Procedure in failing to disclose "the qualifications of [Dr. Blotter], including a list of all publications authored by [Dr. Blotter] within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which [Dr. Blotter] has testified as an expert at trial or by deposition with the preceding four years" within ninety (90) days of trial. Fed. R. Civ. P. 26(a)(2). On January 6, 2006, Defendant disclosed a supplement to its expert witness disclosure containing Dr. Blotter's curriculum vitae. That document clearly reveals his academic qualifications, area of expertise, publications, and cases in which Dr. Blotter has participated. Although the curriculum vitae does not specify Dr. Blotter's experience in the area of aerial lifts, it does disclose enough information about his qualifications to satisfy the mandates of the Federal Rules of Civil Procedure.[2] SPTC was free to investigate Dr. Blotter's relevant experiences more closely in a deposition.

---

[2]Defendant does not assert that it disclosed the compensation it paid Dr. Blotter for his research and testimony. While this might constitute a violation of Federal Rule of Civil Procedure 25(a)(2) if proven, it is not relevant to the present Motion in Limine challenging the sufficiency of Dr. Blotter's qualifications.

5

Furthermore, SPTC claims that the evidence disclosed in the affidavit, if it were considered in evaluating Dr. Blotter's qualifications, is insufficient to qualify Dr. Blotter as a fit expert under the Federal Rule of Evidence 702. Though Dr. Blotter may not have designed aerial lift platforms or accompanying safety equipment or manuals, worked for a manufacturer of aerial lift platforms, authored reports, texts, or articles relating to aerial lift platforms, or sat on an ANSI committee regarding standards for aerial lift platforms, he has researched, lectured, consulted, and testified on the subject. The law does not require that Dr. Blotter be the most qualified expert conceivable, only that he will "assist the trier of fact in understanding and disposing of issues relevant to the case." *Pride*, 218 F.3d at 578. We hold that Dr. Blotter's experience in this area allows him to provide such helpful information to a jury. Therefore, the Court denies STPC's Motion to exclude Dr. Blotter's testimony.

### C.  Motion to Exclude Testimony of Clifford B. Anderson

Defendant moves for the exclusion of Mr. Anderson's testimony because he has not performed previous engineering work in the aerial lift industry. Mr. Anderson works as a professional expert witness. He is employed in testifying as to the mechanical design and safety of at least one hundred and fifteen products, ranging from automobiles to ice makers. While Mr. Anderson has testified regarding the braking aspects of lifts, he has never testified as to the specific defects alleged in the lift in this case. Additionally, he has never worked in the design or manufacture of similar lifts.

Defendant cites several cases from other district courts finding that witnesses could not testify outside their field of expertise. In *Shreve*, the District of Maryland held that a qualified

mechanical engineer could not testify as to the design of a snow thrower when his only professional experience with snow throwers or other outdoor equipment arose out of his employment as a litigation consultant.  *Shreve*, 166 F.Supp. 2d at 391-94.  In *Kerrigan*, the Eastern District of Pennsylvania held that an individual with practical experience using hydraulic systems, but no academic or safety design experience, could not testify to the safeness of a hydraulic system's design.  *Kerrigan v. Maxon Indus.*, 223 F.Supp.2d 626, 637 (E.D. Pa. 2002).  In *Trumps*, the Southern District of New York held that a mechanical engineer, with no experience or background in electrical engineering, could not testify as to the safety of electrical components of a grill.  *Trumps v. Toastmaster, Inc.*, 969 F.Supp. 247, 252 (S.D.N.Y. 1997).

      Mr. Anderson is not so far afield of his area of expertise in mechanical engineering, design, and analysis as the proposed experts in *Kerrigan* and *Trumps*.  Unlike those experts, Mr. Anderson has academic, practical, and design experience in the relevant field of engineering.  Though *Shreve* may provide facts similar facts to this case, we find that Mr. Anderson can provide reliable information useful to jurors regarding the mechanical aspects of the lift in question here.  While he may not have as much expertise as a mechanical engineer specializing in lifts, any "[g]aps in [Anderson's] qualification or knowledge generally go to the weight of the [his] testimony, not its admissibility." *Robinson v. GEICO Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006).  "In a products liability action, an expert witness is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight." *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991).  In fact, courts have held that an expert witness need not have experience working in the specific industry he testifies about. *Surles v. Greyhound Lines, Inc.*, 474 F.3d

288, 294 (6th Cir. 2007); *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76 (2nd Cir. 1997); *Wheeler*, 935 F.2d at 1100. The Court holds that Mr. Anderson is qualified to testify as to the mechanical aspects of the lift.

Defendant further argues that Mr. Anderson is not qualified to testify because his opinion has neither been tested or reviewed by his peers and is therefore not reliable enough to pass *Daubert* analysis. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595, 113 S.Ct. 2786, 125 L.Ed. 2d 469 (1993). Mr. Anderson's report is based on his analysis of the design of the lift, making conclusions based on the mechanical consequences of the "geometry and mechanical arrangement" of the lift components. Based on this design, Mr. Anderson made mechanical engineering calculations to determine the cause of the accident. Defendant does not quibble with the accuracy of the calculations or the scientific theory underlying them. Rather, Defendant argues that Mr. Anderson did not test his conclusions through experiment on the lift to determine that they were accurate.[3] Where Mr. Anderson's *method* of reaching his conclusions is thoroughly tested and well accepted in the mechanical engineering community, and the physical measurements on which it is based are undisputed, the Court holds that actual testing on the broken lift[4] is unnecessary to satisfy the reliability of Mr. Anderson's expert opinion.

---

[3]Defendant also suggests that differences between Mr. Anderson's report and his deposition testimony make him unqualified to testify at trial. The Court finds that this is irrelevant to Mr. Anderson's qualifications and the adequacy of his method, and is only relevant to the strength of his opinion.

[4]The possibility of testing on another similar lift seems near impossible to the Court. Defendant concedes that similar lifts, dating from the 1970's, are largely unresearched by and unavailable to modern mechanical engineering experts. For this reason, Defendant notes that peer review of Mr. Anderson's opinions is impracticable. Similarly, testing on a similar lift would be impracticable.

D. **Motion to Exclude Testimony of Robert Chasnov**

Mr. Chasnov is a professional metallurgist who plans to testify as to his failure analysis of the components of the lift in question. While he has not specifically worked with the metallurgical components of aerial lifts, he has worked as a professor in the area of metallurgy.[5] Though the Faughn Plaintiffs describe him as a "well qualified mechanical engineer," Mr. Chasnov's resume shows no evidence of formal training or work in the field of mechanical engineering.

Defendant does not object to the admissibility of Mr. Chasnov's analysis of the metallurgical components of the lift in question, only his failure analysis describing the cause of the buckling outriggers on the lift. The Faughn Plaintiffs argue that the mechanical consequences of metallurgical failings are "related applications" of Mr. Chasnov's field of expertise in metallurgy. The Court cannot agree. While Mr. Chasnov might provide useful information to a jury regarding the metallurgical components of the lift, he cannot provide an academically grounded failure analysis of the mechanical consequences. The Court holds that Mr. Chasnov is qualified to testify as to matters of metallurgical science, but not failure analysis.

---

[5]Defendant seeks to further disqualify Mr. Chasnov by pointing out that this is the first case in which he has testified. Previously, Defendant argues to Mr. Anderson is less qualified as an expert simply because he has testified on many scientific matters in numerous trials. The Court holds that the number of cases in which he has testified is not relevant to the sufficiency of an expert's scientific qualifications. Rather, the Court looks to the expert's experience in the field of science on which he will testify.

## CONCLUSION

For the above reasons the Court now **DENIES** Plaintiffs' Motions in Limine to exclude the expert testimony of Dr. Blotter and Dr. Jendrzejewski.  The Court also **DENIES** Defendant's Motion in Limine to exclude the testimony of Mr. Anderson.  Defendant's Motion in Limine to exclude the testimony of Mr. Chasnov is **GRANTED** to the extent that he might testify in the field of mechanical engineering.  Mr. Chansov is permitted to testify in the fields of metallurgy and materials engineering.  An appropriate Order shall issue.